**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**BRADLEY KLOECKL**,

      Plaintiff,

vs.                                              No. 09cv240 MCA/GBW

**MORENO VALLEY HIGH SCHOOL ("MVHS"),
KURT KAUFMAN, Individually and in his capacity
as Former Director of MVHS, and RICHARD
BINGHAM, DENNIS COX and SMITH HOLT,
Individually, as Members or Former Members
of the MVHS Governing Council,**

      Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Defendants' *Motion to Dismiss* [Doc. 12], filed June 26, 2009. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court grants the motion.

**I. BACKGROUND**

The following facts and well-pleaded allegations are set forth in the *Complaint* and, for purposes of Defendants' motion to dismiss, are accepted as true and construed in a light most favorable to Plaintiff. See Williams v. Meese, 926 F.2d 994, 997 (10th Cir. 1991).

At all times relevant to this action, Plaintiff Bradley Kloeckl was employed as a tenured faculty member at Defendant Moreno Valley High School ("MVHS"), a charter school located in Angel Fire, New Mexico, and duly organized under the laws of the State

of New Mexico. Mr. Kloeckl, who was a founding member of MVHS, taught Advanced Placement English, German, and other courses. Defendant Kurt Kaufman was at all relevant times the director of MVHS. Defendants Richard Bingham, Dennis Cox, and Smith Holt all were members of MVHS's Governing Council ("the GC"). [Doc. 1 at 1-2].

According to Mr. Kloeckl, he "was widely regarded as one of MVHS's finest teachers." [Doc. 1 at 2]. However, in February 2006, after he failed one of his foreign-language students, the student accused Mr. Kloeckl of having kicked and thrown a chair at him a year earlier. Defendant Kaufman subsequently reprimanded Mr. Kloeckl by, among other things: (1) reporting him to law enforcement authorities; (2) reporting him to the State Board of Education; and (3) requiring him to complete two "Corrective Action Plans" designed to address the alleged behavior. [Id. at 3]. Mr. Kloeckl contends that Defendant Kaufman took these actions (1) even though he "knew or should have known that [the] allegations against Kloeckl were unfounded or greatly exaggerated[;]" and (2) "almost immediately after Kloeckl voiced opposition to Kaufman's announced plan to attempt to seek amendment of the Charter of MVHS. . . ." [Id.]. Mr. Kloeckl submits that Defendant Kaufman's actions were designed to punish him for his speech, as well as for his association with a small group of other founding faculty members that frequently protested activities of the MVHS administration. [Id.].

Mr. Kloeckl contends that he complied with both the letter and the spirit of the Corrective Actions Plans. Nevertheless, in April 2006, Defendant Kaufman recommended the non-renewal of Mr. Kloeckl's teaching contract. Later that same month, the GC adopted

2

Defendant Kaufman's recommendations.[1] [Doc. 1 at 3].

Thereafter, on May 11, 2006, the GC's attorney, Patricia Matthews, sent a letter to Mr. Kloeckl in which she explained that his contract was not being renewed because he had "demonstrated his disdain for administrative authority" by speaking out against Defendant Kaufman's predecessor. [Doc. 1 at 3-4]. In response, counsel for Mr. Kloeckl sent Ms. Matthews a letter in which counsel requested that the GC "revisit its decision[,]" and also gave notice that, absent Mr. Kloeckl's reinstatement, counsel would file suit pursuant to 42 U.S.C. § 1983. [Id. at 4].

On June 8, 2006, Mr. Kloeckl appeared at a GC meeting to object to the contract non-renewal. However, at the end of the meeting, a majority of the GC, which Mr. Kloeckl contends was represented by Defendants Bingham, Cox, and Holt, voted to affirm the decision not to renew. [Doc. 1 at 4-5].

On June 14, 2006, Mr. Kloeckl filed a timely appeal from the GC's decision. He and the GC also began an attempt at settlement negotiations in hopes of resolving the matter without resort to litigation or the arbitration to which Mr. Kloeckl was entitled pursuant to

---

[1] According to Mr. Kloeckl, at the time he was attempting to comply with the Corrective Action Plans, the GC invited the mother of the foreign-language student that Mr. Kloeckl had failed to "join its ranks." [Doc. 1 at 4]. Mr. Kloeckl contends that, although she ultimately abstained from voting on the matter of his contract renewal, she nevertheless "was allowed to voice her opinions and air her grievances against [him] before the GC. . . ." [Id.]. Mr. Kloeckl originally had alleged that the mother's presence had "tainted" the GC which, in turn, caused Mr. Kloeckl to be denied an unbiased decision-maker. [Id. at 6-7]. This alleged taint formed the basis for a claim by Mr. Kloeckl that he had been denied his right to procedural due process, as guaranteed by the Fourteenth Amendment. [Id.]. Mr. Kloeckl has since withdrawn any such claim. [See Doc. 17 at 5 n. 2 ("Kloeckl withdraws any claim of procedural due process related solely to the student's Mother's participation in the pre-termination process.")].

N.M. STAT. ANN. § 22-10A-25.[2] However, negotiations failed and Mr. Kloeckl demanded arbitration. MVHS refused to arbitrate and took the position that Mr. Kloeckl had waived his right to arbitrate. [Doc. 1 at 5].

On October 5, 2006, Mr. Kloeckl filed a petition to compel arbitration which, after a hearing, was granted by the Honorable John Paternoster of New Mexico's Eighth Judicial District Court. [Doc. 1 at 5].

In February 2007, Mr. Kloeckl and Defendants participated in a four-day arbitration hearing, following which the arbitrator ruled that (1) Mr. Kloeckl had been wrongfully terminated; (2) MVHS did not have "just cause" for the contract non-renewal; and (3) Mr. Kloeckl should be reinstated to his teaching position, effective March 26, 2007. [Doc. 1 at 5].

Mr. Kloeckl returned to work on March 26, 2007. However, he asserts that "he was given no teaching responsibilities and was relegated to completing administrative tasks and projects." [Doc. 1 at 5-6]. He also asserts that because of the emotional distress he endured and the expenses he incurred in connection with his pursuit of arbitration, he decided at the end of the 2007 school year not to return to the MVHS faculty. Instead, he moved to Alaska. [Id. at 6].

On March 12, 2009, Mr. Kloeckl filed his 42 U.S.C. § 1983 civil-rights *Complaint*, alleging that (1) he possessed a protected property interest in continued employment with

---

[2] This statutory section governs appeals by employees who are aggrieved by decisions of local school boards or governing authorities. It also sets forth procedures for review by an independent arbitrator. See N.M. STAT. ANN. § 22-10A-25.

4

MVHS, which Defendants denied him without procedural due process (Count I); and (2) Defendants retaliated against him for exercising his First Amendment rights to free speech and association (Count II). [Doc. 1 at 6-9].

Defendants now move to dismiss the due process claim asserted in Count I of the *Complaint*. [See Doc. 12; see also Doc. 13 at 2]. They argue that this claim fails because (1) the arbitrator's directive that Mr. Kloeckl be reinstated means that he has not suffered a property deprivation giving rise to a due process claim; (2) alternatively, Mr. Kloeckl was provided all the process he was due; and (3) the individual defendants are entitled to qualified immunity. [Doc. 13 at 2].

## II. ANALYSIS

### A. Motion to Dismiss; Fed.R.Civ.P. 12(b)(6)

In order to withstand a motion to dismiss made pursuant to Fed.R.Civ.P. 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 569 (2007). In handing down Twombly, the United States Supreme Court invalidated the longstanding rule that a complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The Court explained that "after puzzling the profession for 50 years, this famous observation has earned its retirement." Twombly, 550 U.S. 544, 563. In order to survive dismissal under the new standard, a plaintiff must "nudge[ his] claims across the line from conceivable to plausible . . . ." Id. at 570. In other words, "the

mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

The Tenth Circuit has stated that

> "plausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008) (*quoting* Twombly, 550 U.S. at 570)(internal citations omitted).

The Supreme Court has recently expounded upon the meaning of Twombly:

> Two working principles underlie [the] decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009)(citation omitted). The Supreme Court has also commented that [i]n keeping with these principles a court considering a motion to

dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  Id. at 1950.

Finally, "'[t]he court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted.'" Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009) (*quoting* Sutton v. Utah State Sch. for Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir.1999)).  Additionally, "[i]n evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits. . . ."  Smith, 561 F.3d at 1098.  With these standards in mind, the Court now turns to the case at hand.

### B.      42 U.S.C. § 1983 and the Defense of Qualified Immunity

Mr. Kloeckl brings this action pursuant to 42 U.S.C. § 1983.  Section 1983 of Title 42 of the United States Code provides, in relevant part, that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  Section 1983 is not an independent source of substantive rights; rather it is a mechanism for enforcing federal rights conferred elsewhere, see Albright v. Oliver,  510

7

U.S. 269, 271 (1994), and provides a remedy "for any person who has been deprived of rights secured by the Constitution or laws of the United States by a person acting under color of law." Curley v. Klem, 298 F.3d 271, 277 (3rd Cir.2002). Accordingly, an analysis of a plaintiff's federal civil-rights claim necessarily begins by identifying the specific constitutional right or rights allegedly infringed. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

In this case, and as is relevant to the *Motion to Dismiss* that is now before the Court, Mr. Kloeckl asserts that, as a tenured faculty member, he possessed a protected property interest in his continued employment with MVHS sufficient to invoke due process protections. He contends, however, that Defendants committed a violation of this Fourteenth Amendment right when they "refused to provide him with the post-termination arbitration to which he was constitutionally and statutorily entitled until he obtained a court order compelling them to do so." [Doc. 17 at 3]. As a result of Defendants' actions, maintains Mr. Kloeckl, he sustained damages in the form of emotional distress and attorneys' fees "incurred in securing his constitutional due." [Id.]. As stated, the individual defendants have moved to dismiss on grounds including their entitlement to qualified immunity. [See Doc. 13 at 4-5; Doc. 18 at 2-7].

When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff, who must first establish that the defendant violated a constitutional right. Cortez v. McCauley, 478 F.3d 1108, 1114 (10th Cir. 2007) (*citing* Reynolds v. Powell, 370 F.3d 1028, 1030 (10th Cir.2004)). "If no constitutional right would have been violated were the

8

allegations established, there is no necessity for further inquiries concerning qualified immunity." Saucier v. Katz, 533 U.S. 194, 201 (2001). If, however, a violation has been shown, the next step in the qualified- immunity sequence is to ask whether the constitutional right was clearly established when the alleged conduct occurred. See Cortez, 478 F.3d at 1114. "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." Saucier, 533 U.S. at 201. Indeed, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202. This is not to say, however, that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful. Rather, it is to say that the unlawfulness must be apparent in light of pre-existing law. Hope v. Pelzer, 536 U.S. 730, 739 (2002). While courts are no longer required to follow Saucier's two-step protocol in sequence, the United States Supreme Court "continue[s] to recognize that it is often beneficial[]" to do so. Pearson v. Callahan, 129 S.Ct. 808, 818 (2009); see also Poolaw v. Marcantel, 565 F.3d 721, 728 n. 5 (10th Cir. 2009) (explaining that, in Pearson, the Supreme Court made Saucier's "order of battle" discretionary).

The Fourteenth Amendment to the United States Constitution protects against the deprivation of "life, liberty, or property, without due process of law. . . . " U.S. CONST. AMEND. XIV, § 1. As the Tenth Circuit has explained,

> procedural due process ensures that a state will not deprive a
> person of life, liberty or property unless fair procedures are used
> in making that decision; substantive due process, on the other

9

> hand, guarantees that the state will not deprive a person of those rights for an arbitrary reason regardless of how fair the procedures are that are used in making the decision.

Archuleta v. Colorado Dept. of Insts., Div. of Youth Servs., 936 F.2d 483, 490 (10th Cir. 1991). Still, while in theory procedural and substantive due process protect different interests (*i.e.*, procedure and substance), "both serve as safeguards against abusive state action." Id. at 490-491.

The plaintiff in Archuleta was a Department of Youth Services worker who possessed a protected property interest in continued employment and, thus, could be terminated only for cause. Archuleta, 936 F.3d at 489. As with Mr. Kloeckl, Carmen Archuleta was a tenured state employee. As the Tenth Circuit noted, "[w]here the state action is the dismissal of a tenured public employee, the procedural safeguard required by the Constitution typically includes a pre-termination as well as a post-termination hearing." Id. at 491. Carmen Archuleta was provided a pre-termination hearing, after which she was terminated. Following a more extensive post-termination hearing, Ms. Archuleta was reinstated with back pay. Id. Accordingly, "the procedure required by the Due Process Clause served its purpose—it protected [Ms. Archuleta] against arbitrary state action by restoring to her the property that was taken." Id.

So too with Mr. Kloeckl, who although terminated following a pre-termination appearance before the GC on June 8, 2006, was later reinstated after an independent arbitrator determined that he had been wrongfully terminated and discharged without just cause. [See Doc. 1 at 4-5]. The Tenth Circuit has held that when a procedurally adequate

post-termination hearing results in a public employee's reinstatement, the employee cannot state a 42 U.S.C. § 1983 claim for loss of a constitutionally protected property interest in employment. See Workman v. Jordan, 32 F.3d 475, 479 (10th Cir. 1994); Archuleta, 936 F.3d at 491. Put differently, restoration of the employee's job prevents the Court from "evaluat[ing] any grievance procedure as inadequate." Workman, 32 F.3d at 480 ("[W]e find it difficult to evaluate any grievance procedure as inadequate when the employee was reinstated and given full back pay.").

Notwithstanding this clearly stated rule, Mr. Kloeckl contends that his reinstatement does not excuse Defendant's alleged Fourteenth Amendment violation, and cites Lovingier v. City of Black Hawk, 1999 WL 1029125 (10th Cir. Nov. 12, 1999) (unpublished) for the proposition that "if the Plaintiff is not made entirely whole through a procedure, he may challenge whether the procedure meets the requirements of due process." [Doc. 17 at 9]. Mr. Kloeckl argues that he was not made entirely whole as a result of his reinstatement because he incurred damages, emotional and financial, as a result of having spent months in pursuit of the arbitration to which he was statutorily entitled. [Id. at 9-10].

The plaintiff in Lovingier was a firefighter who, on April 17, 1996, was handed a notice of dismissal by the City's Fire Chief, "effective immediately." Lovingier, 1999 WL 1029125, at *1. Mr. Lovingier appealed his dismissal to the City Manager, who conducted a post-termination hearing at which Mr. Lovingier was represented by counsel and during which he was given the opportunity to call and cross-examine witnesses. Id. The City Manager concluded that Mr. Lovingier was terminated in violation of the City's policies

11

inasmuch as he was given neither the opportunity to respond to the allegations against him, nor reasonable time to prepare any such response. While the City Manager ultimately sustained Mr. Lovingier's termination, "to remedy the injury resulting from the city's failure to give Lovingier a proper termination hearing, she ordered the city to pay him his regular salary from April 17, 1996, the date of termination, to May 30, 1996, the date the post-termination hearing was originally scheduled." Id.

Mr. Lovingier then filed suit against the City, the Fire Chief, the City Manager, and others, alleging a violation of his Fourteenth Amendment right to due process. The individual defendants unsuccessfully moved to dismiss on grounds including qualified immunity. Lovingier, 1999 WL 1029125, at *1.

Affirming in pertinent part, the Tenth Circuit held that, where Mr. Lovingier was handed a notice of dismissal that was "effective immediately" and, therefore, "was terminated at the very moment he was given notice of the charges against him[,]" his complaint was sufficient to state a claim for the denial of the clearly established right to an opportunity to be heard at a meaningful time and in a meaningful manner before termination. Lovingier, 1999 WL 1029125, at *3-4. The circuit expressly rejected the defendants' Workman- and Archuleta-based argument that, because Mr. Lovingier was awarded back pay "for the stated purpose of remedying the inadequacy of the pretermination hearing, [Mr.] Lovingier suffered [no] deprivation of a property right at all." Id. at *4.

As the circuit's analysis makes clear, the critical distinction between Mr. Lovingier's situation and those present in Workman and Archuleta was that the Workman and Archuleta

plaintiffs were reinstated to their positions, whereas Mr. Lovingier was not. Lovingier, 1999 WL 1029125, at *5. Thus, in contrast to Mr. Lovingier's post-termination hearing, the post-termination proceedings in Workman and Archuleta restored to those plaintiffs all the property rights of which they previously had been deprived. Because the effect of the post-termination hearings in Workman and Archuleta was to give back to the plaintiffs what had been taken, the circuit "refused to review the adequacy of challenged procedures on the grounds that the plaintiffs had suffered no deprivation of a property interest." Id. On the other hand, Mr. Lovingier *had* been deprived of his property interest in continuing employment and, for that reason, the circuit was not prepared to say that he had "suffered no deprivation of a property interest so as to foreclose review of the adequacy of process he received." Id.

In the instant case, Mr. Kloeckl was reinstated to his teaching position by order of the independent arbitrator, and he returned to MVHS effective March 26, 2007. [Doc. 1 at 5]. Notwithstanding the restoration of his property (*i.e.*, the tenured faculty position from which he could only be terminated for cause), Mr. Kloeckl "challenges the fact that Defendants refused to provide him with the procedure to which he was statutorily and constitutionally entitled, until forced to do so by a court of law eight months after his termination." [Doc. 17 at 9-10]. For this reason, contends Mr. Kloeckl, "Workman is clearly inapposite to the case at hand." [Id. at 10].

The Court disagrees and concludes that because Mr. Kloeckl was reinstated to his teaching position, albeit after a struggle to compel Defendants to submit to the arbitration to which he was legally entitled, his situation is more analogous to that of the plaintiff in Workman than the plaintiff in Lovingier, who was *not* reinstated and, therefore, was not ultimately restored the property he had been denied. That Mr. Kloeckl may have incurred damages, emotional and financial, in compelling Defendants' participation in arbitration is not dispositive where, as in Workman, "the fact of his reinstatement remains." Workman, 32 F.3d at 480. To be sure, just as Mr. Kloeckl complains that Defendants delayed and impeded his attempts to compel arbitration, so too were the defendants in Workman charged with having "marred" Captain Workman's post-termination hearing by refusing to comply with his requests for documents and encouraging witnesses not to participate. Id. Still, any emotional trauma and monetary expenses that Captain Workman might have sustained in connection with his post-termination grievance proceeding were deemed by the circuit to be "incidental losses [that did] not give rise to an independent protected property interest." Id. n. 4.

The result is the same here. The property interest of which Mr. Kloeckl was deprived was his tenured teaching position with MVHS. That property was restored as a result of the independent arbitrator's decision that Mr. Kloeckl was terminated without just cause and was entitled to reinstatement. Mr. Kloeckl was indeed reinstated to his teaching position effective March 26, 2007. [Doc. 1 at 5]. It therefore is Workman v. Jordan, not Lovingier v. City of Black Hawk, that controls and mandates the conclusion that, because Mr. Kloeckl suffered

14

no due process violation, Defendants are entitled to qualified immunity.

### III. CONCLUSION

For the reasons stated more fully above, because Bradley Kloeckl ultimately was reinstated to his tenured teaching position, he has not demonstrated that he suffered a violation of his Fourteenth Amendment right to due process as a result of Defendants' actions. Because Mr. Kloeckl has not established a constitutional violation, he is unable to overcome Defendants' entitlement to qualified immunity. Accordingly, the Court will grant Defendants' *Motion to Dismiss.*

**IT IS, THEREFORE, ORDERED** that Defendants' *Motion to Dismiss* [Doc. 12] is **GRANTED**;

**IT IS FURTHER ORDERED** that Count I of the Complaint (Violation of Civil Rights Pursuant to 42 U.S.C. § 1983/Deprivation of Property Interest Without Procedural Due Process) is **DISMISSED**.

**SO ORDERED** this 10th day of March, 2010, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
United States District Judge

15